## JAMES A. BOOTS v. JULIUS SEINBERG.

*Mechanic's lien— Contract—Approval of work—Waiver.*

1. Where a building contract provides that all of the work shall be performed to the satisfaction of the owner, or his superintendent, if he shall appoint one, and a portion of the work is not done according to the specifications, but the change is discussed, and the course taken acquiesced in by the owner, it may be said to have been approved by him; but to go further, and say that the fact of such construction without interference is conclusive of the question of approval, would be, in effect, to say that whatever the contractor could succeed in doing must be taken as approved,—a proposition that puts such a premium upon bad faith as to be untenable.

2. While, in such a case, the contractor may rely upon what was actually approved under the contract, he is supposed to understand the specifications and how the work should be performed as well as the superintendent, and as well as, if not better than, the owner, and he cannot be permitted to invoke the doctrine of estoppel where some of its elements are lacking.

3. A bill will not lie to enforce a mechanic's lien for the balance claimed to be due on a building contract, which provides that the work shall be done to the satisfaction of the owner or his superintendent as it progresses, and that it shall not be fully paid for until completed to the satisfaction of the owner, where it appears that the claim of the owner that the work has not been completed to his satisfaction has a substantial basis, and is not captiously made.

4. Where a building contract provides that the price for extras shall be settled by arbitrators unless agreed upon, the parties will be held to have provided their own forum to determine the value of such extras, and, until such value has been fixed by arbitration or agreement, the same is not due, and a bill will not lie to enforce a lien therefor.

Appeal from Grand Traverse. (Ramsdell, J.) Submitted on briefs February 15, 1894. Decided April 17, 1894.

Bill to enforce a mechanic's lien. Defendant appeals. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Pratt & Davis,* for complainant.

*Covell & Gilbert* (*Fitch R. Williams,* of counsel), for defendant.

HOOKER, J. Complainant, having performed labor upon defendant's building, filed the bill in this cause to enforce a mechanic's lien for a balance which he claims to be due upon the contract, including some extras not embraced in the specifications, which were made a part of the contract. This contract was made September 14, 1891. According to the complainant's testimony, the work was commenced September 17, 1891, and completed on December 29, following. The statutory notice was filed on February 11, 1892, and was in strict conformity to the requirements of the statute. Laws of 1891, p. 231. The defense is interposed that nothing is, or at the time of such notice was, due, it being claimed that, by the terms of the contract,

the amount would not become payable until the building was completed *to the satisfaction of the defendant,* which has not been done. It is further asserted that, by the terms of the contract, the price for extras was to be settled by arbitrators, unless agreed upon; that it never has been determined in either way, and hence the same is not due, nor is it the proper subject of a lien. It is also alleged that, owing to careless or unskillful work, the building is not as valuable as it would otherwise have been, by reason of which the defendant has suffered damage, exceeding the amount of complainant's claim. Defendant also claims that he has furnished goods to the workmen of complainant, and has furnished materials for him in and about the erection of the building, which should be applied in payment. The further claim is made that the complainant has filed an excessive lien, and that it is therefore void.

The brief of defendant's counsel states the matters in dispute relating to the non-performance of the contract as follows, viz.:

1. Failure to properly put in concrete footings, in that some were not as deep as required, and that the concrete was put in the water, instead of being put in dry.

2. Failure to finish and clean the front elevation.

3. Failure to line, clean, and "rub smooth" the flues in the building.

4. Failure to point up under the window sills and the stonework of the foundation.

The contract provides that—

"The contractor shall and will well and efficiently perform and finish, under the direction and to the satisfaction of Julius Steinberg, or his superintendent, if he shall appoint one (acting as agent of said owner), all the work hereinafter mentioned to be performed," etc.

It further provides that—

"The owner, Julius Steinberg, shall have power to act

as superintendent of said work, or to appoint some one to act in such capacity."

The payments are provided for as the work progresses, reserving 10 per cent. from each amount mentioned, and it is further provided that—

"Within 10 days from the completion of said work to the satisfaction of Julius Steinberg, the entire balance due the contractor shall be paid."

This contract clearly required that the work should be done to the satisfaction of the owner or his superintendent, as it progressed, and that it should not be fully paid for until completed to the satisfaction of the owner. Some of the matters complained of were, according to our view of the evidence, approved by the owner and the superintendent, as the building went up. We think that was true of the concrete footings, which were not constructed according to the specifications, but which were discussed, and the course taken acquiesced in. There might be some force in the contention that the same is true of the construction of the flues, as to lining and rubbing, were there evidence that it was knowingly permitted, or if the facts were such as to make it plain that the owner or superintendent must have acquiesced. To go further, and say that the fact of such construction without interference is conclusive of the question of approval, would be, in effect, to say that whatever the contractor could succeed in doing must be taken as approved,—a proposition that would put such a premium upon bad faith as to be untenable. While the contractor may rely upon what was actually approved under the contract, he is supposed to understand the specifications and how the work should be performed as well as the superintendent, and as well as, if not better than, the owner; and he cannot be permitted to invoke the doctrine of estoppel where some of its elements are lacking, making it "a sword, and not a shield." But, whatever may be said

about the construction of the flues, it cannot be claimed that any one approved of their stoppage. The complainant claims he succeeded in cleaning them out,—*i. e.*, knocking the obstructions out,—and this is a controverted fact. We are satisfied from the evidence, including that of the architect, that such flues were not effectually cleaned out, and that they were not constructed as the specifications required, and that defendant never was satisfied with them.

The stonework was injured by the cleaning, acid being used, which, in connection with the iron in the stone, gave them a yellow appearance, the effect of iron rust. It is claimed by the complainant that this was because too much acid was used, and that for this the defendant was responsible, having directed the workmen to use more than was prudent. Complainant also claims that the stone were not injured by using the brush and pail used upon the brickwork, upon which this acid might properly and safely be used. The evidence is conflicting upon these subjects, but we think the complainant did not perform his whole duty in the premises. He undertook to erect an ornamental front, one for which the defendant went to the expense of importing stone, that it might be such. The complainant assumed to know how to treat it, and it was his place to see that care was used. We do not find evidence which justifies the conclusion that the owner took the matter out of his hands, and thereby relieved him from responsibility.

It is admitted that the sills were not pointed, but were overlooked. There is no dispute but that the defendant asked that it be done. Complainant said that he would attend to it, and asked defendant to send around some lime, but, when complainant went to do the work, no lime was there, and soon after it froze up, and it is claimed that defendant's failure to send the lime when required was sufficient excuse. If the case turned upon

this question, we, might not feel constrained to deny complainant relief because the sills were not pointed.

Upon the whole case, we think that the defendant had some cause for being dissatisfied, and that the claim that the work was not completed to his satisfaction had a substantial basis, and was not captiously made. That being so, there was nothing due upon the contract, and could not be until the building was completed to defendant's satisfaction, unless, as complainant claims, the defendant has accepted the work, thereby acknowledging satisfaction.

In the case of *Hanley v. Walker,* 79 Mich. 607, 618, Mr. Justice CHAMPLIN, speaking for the whole Court, says:

"The principles laid down in *Allen v. McKibbin* [5 Mich. 454] do not apply to cases where the parties have by their agreement made some act or fact a condition precedent to payment, unless the other party has waived the condition. The waiver may be express, or it may be implied from facts and circumstances, as where the party relying upon the condition has accepted or appropriated the property or fruits of the labor of the other party. There is no evidence in the record before us that can be construed into a waiver of the conditions precedent contained in the contract on the part of the defendant.

"When a person contracts with another to build, or to do some portion of the work in constructing buildings, upon real estate belonging to the owner of such real estate, his taking possession after the other has left the premises cannot be construed as an unequivocal acceptance, although he thereby takes possession of, and appropriates to his use and benefit, the labor or materials of the contractor. He must do so, as a matter of necessity, in many cases, or suffer the property to stand idle and unused, to the great detriment of all parties, and especially so of the owner. The most that can be said, in such cases, is that the act of the party, and all the circumstances, may be taken into consideration in the determination of the question whether there is an implied waiver of the condition precedent."

The extras claimed cannot be called due, for they were to be submitted to arbitration, and no step has been taken

to that end.   The parties have seen fit to make their contract, and it is not for us to make one for them.   They have provided their own forum to determine the value of extras, and it is not for us to deprive either of the right to such forum.

The decree of the circuit court must be reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.